IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. TOMMY THOMPSON and | § | |
| REBEKAH RIOS-HARRIS | § | |
|     Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO._____ |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT | § | |
| | § | |
|     Defendant | § | |

## PLAINTIFFS DR. TOMMY THOMPSON AND REBEKAH RIOS-HARRIS'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs Dr. Tommy Thompson and Rebekah Rios-Harris (collectively "Plaintiffs"), complaining of the actions of Dallas County Community College District, and in support thereof, would respectfully show the Court as follows:

### I.      Parties

1.1     Plaintiff Dr. Tommy Thompson ("Dr. Thompson") is a citizen of the United States and resides in Dallas, Dallas County, Texas.

1.2     Plaintiff Rebekah Rios-Harris ("Rios-Harris") is a citizen of the United States and resides in Cedar Hill, Dallas County, Texas.

1.3     Defendant Dallas County Community College District ("DCCCD" or "Defendant") is a public community college system organized and existing pursuant to the laws of the State of Texas for the purpose of operating a network of community colleges in and around Dallas County, Texas. There are seven (7) community colleges within the district, including Cedar Valley College ("CVC"). The address of its administrative offices is 1601 S. Lamar Street, Dallas, Dallas County,

Texas 75215, and Defendant may be served with process by serving its Chancellor, Dr. Joe May, at the foregoing address.

## II.     Jurisdiction and Venue

2.1     This Court has jurisdiction over this matter pursuant to the United States Constitution, particularly the Fifth and Fourteenth Amendment and under federal statutory law, particularly, 42 U.S.C. §§ 1981, 1983 and 1988.

2.2     This Court is vested with original jurisdiction over these claims by operation of 28 U.S.C. §§ 1331, 1343(a)(3).

2.3     This Court has in personam jurisdiction over Defendant because it is a governmental entity located in the State of Texas.

2.4     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Defendant is located and it is the judicial district in which substantial part of the events or omissions giving rise to the claims occurred.

2.5     Additionally, an actual controversy exists between the parties hereto within the meaning of 28 U.S.C. § 2201, and this Court is, therefore, vested with the power in the instant case to declare and adjudicate the legality and/or constitutionality of certain rules and regulations of Dallas County Community College District, as adopted, applied, and/or interpreted by Dallas County Community College District. As to racial discrimination claims brought herein, if the Defendant claims its actions result from an affirmative action plan, then Plaintiffs seek the court to declare it invalid on its face and/or as applied.

## III.     Factual Background

3.1     Dr. Thompson, a white male, has been employed by DCCCD at its CVC campus in the role of Professor of Mathematics since 1991. Prior to his most recent position, Dr. Thompson

was also employed by DCCCD as a Professor of Mathematics at Brookhaven College from 1978 to 1990, and as a Laboratory Coordinator and Instructor of Mathematics at CVC from 1977 to 1978. In addition, Dr. Thompson has served as an advisor of the CVC chapter of Phi Theta Kappa ("PTK"), an international honor society for two-year academic programs, for about twenty-eight (28) years.

3.2     Rios-Harris, a Hispanic female, has been employed by DCCCD at its CVC campus as a member of the English faculty since 2000 and is currently the Coordinator for English and Integrated Reading and Writing. She has previously worked for DCCCD since about 1990. In addition to her teaching duties, Rios-Harris also served as an advisor to PTK alongside Dr. Thompson since about 2005. In their capacity as advisors for PTK, Dr. Thompson and Rios-Harris have consistently lead the organization to national and global recognition. In 2014, their PTK chapter was named Most Distinguished Chapter. It was recognized as one of the top three (3) chapters in 2015, and one of the top two (2) in 2016. Dr. Thompson and Rios-Harris have also received numerous awards for their involvement in the honor society. Most recently, in the 2017-18 school year, the CVC chapter of PTK was named a five-star chapter, named a Top 25 Distinguished Chapter, and received one of three Distinguished Theme Awards for Honors in Action as well as a Distinguished Honors in Action Project Award. Dr. Thompson and Rios-Harris were both recognized among 15 chapter advisors for Continued Excellence Awards.

3.3     During a PTK conference in Philadelphia from June 18–23, 2018, Dr. Thompson and Rios-Harris became aware of a rumor surrounding the CVC chapter of PTK. It was said that the officers of the CVC PTK were required to pay extra monies in dues (roughly $500). That is not the case.

3.4     On or about July 11, 2018, Dr. Thompson and Rios-Harris met with two (2) PTK students and officers-elect, Vanessa Sotelo ("Sotelo") and Sergio Nuno ("Nuno"), to discuss the misunderstanding concerning PTK dues. Edward Stith ("Stith"), Librarian III and another advisor of PTK, was present as well. On or about July 21, PTK held a retreat at which all the newly elected officers of PTK were present along with Dr. Thompson and Stith. Rios-Harris was out of the country and could not attend. The annual budget for PTK was presented and explained at the retreat. Officers are also given a copy for the budget for their officers' notebooks. Dr. Thompson made it a point to praise the student officers on their preparedness for the retreat and upcoming year.

3.5     Unbeknownst to Dr. Thompson and Rios-Harris, Sotelo and Nuno met with Audra Barrett ("Barrett") on or about July 26, 2018. Barrett, a white female, is Vice President of Instruction at CVC and also serves as the fourth advisor for PTK. At this meeting, Sotelo and Nuno expressed a number of subjective complaints about PTK, Dr. Thompson, and Rios-Harris. At the conclusion at this meeting, Barrett failed to present the complaints to the other PTK advisors, but rather scheduled a follow-up meeting with the complaining students and Dr. Lisa Copprue ("Copprue"). Copprue, an African-American female, serves as the Vice President of Student Development and Enrollment Management, and has served in that capacity since 2017.

3.6     On or about July 27, 2018, Copprue and Barrett met with Sotelo and Nuno. James Melcher ("Melcher"), a 2017 graduate of CVC and former PTK member was also in attendance. In preparation for the meeting, the students brought a bullet list of talking points and complaints. Once again, Dr. Thompson and Rios-Harris were not permitted to participate in this meeting, nor were they even aware that the meeting was taking place or that the students had complaints. It additionally became known to both Copprue and Barrett that Sotelo had made unilateral secret

audio recordings, a violation of DCCCD policy. Rather than addressing clear and admitted violations of DCCCD policies by Sotelo, Copprue and Barrett continued to collect unsubstantiated claims against Dr. Thompson and Rios-Harris. Following the meeting on July 27, Barrett requested a copy of the bullet list of complaints prepared by the students, which Sotelo supplied on or about July 29, 2018.

3.7     Copprue and Barrett subsequently formulated a formal grievance against Dr. Thompson and Rios-Harris with CVC based off of their private meetings with Sotelo, Nuno, and Melcher and the bullet list supplied by Sotelo. Copprue and Barrett submitted an extensive list of false and disparaging statements about Dr. Thompson and Rios-Harris to CVC, an inappropriate action under CVC policies. According to DCCCD and CVC policy, students are to submit a complaint through the Maxient system. The complaint is then forwarded to a Maxient Administrator. The Vice President of Instruction, in this case, Barrett, is also notified of the complaint. The Maxient Administrator is then supposed to forward the complaint along to the faculty member(s) central to the complaint. If necessary, an investigation takes place under the supervision of a coordinator. The investigation is then presented to the appropriate Dean. The Dean is then to discuss the final decision with the faculty member(s). These procedures were not followed.

3.8     Three (3) days after meeting with Sotelo, Nuno, and Melcher, Copprue called a meeting with Dr. Thompson and Rios-Harris on July 30, 2018 (the "July 30 Meeting"). Dr. Thompson and Rios-Harris were given less than an hour notice of the meeting and were only able to attend the meeting as scheduled because they happened to be on campus at the time they were made aware of the appointment. Barrett was also in attendance. The fourth advisor, Stith accompanied Dr. Thompson to the meeting, but was dismissed by Copprue and refused

admittance. Warren Davis ("Davis"), Human Resources Executive Director, was also absent. At the July 30 Meeting, Copprue proceeded to berate Dr. Thompson and Rios-Harris with the students' allegations. When they attempted to address the allegations, Copprue responded that she did not want to hear what they had to say. She raised her voice several times during the meeting. At one point, Rios-Harris stated that she felt ill, a direct consequence of Copprue's aggressive behavior. Dr. Thompson and Rios-Harris were not permitted the opportunity to defend themselves against the serious, disparaging accusations (insofar as they could understand them). Copprue also informed Dr. Thompson and Rios-Harris that as of that day, they were removed from their positions as PTK advisors. As a result, neither of them would be receiving the additional financial compensation that comes from their extra efforts serving as advisors.

3.9     Copprue indicated that she was leading the investigation of the students' complaint. Copprue is not the direct supervisor or dean of Dr. Thompson or Rios-Harris. Dr. Thompson's dean is Eddy Rawlinson, Executive Dean of Math, Science and Allied Health. Rios-Harris works under Dr. Solomon Cross, Executive Dean of Liberal Arts. Since her start at CVC, Copprue has hired only female or African American employees to work under her. Of the twenty-six (26) administration positions, nineteen (19) are filled by African-American employees. There are four (4) Hispanic, two (2) white, and one (1) Asian administrators.

3.10     Dr. Thompson and Rios-Harris continued to suffer a hostile work environment after the July 30 Meeting. Dr. Thompson and Rios-Harris attempted to meet with Davis to address the issue of the July 30 Meeting. However, Davis evaded their attempts to meet and continuously rescheduled and cancelled planned meetings. This caused Dr. Thompson and Rios-Harris to feel neglected and abandoned by CVC and DCCCD. Additionally, Copprue would taunt Dr. Thompson and Rios-Harris by approaching them despite knowing that they were both instructed not to engage

with any of the individuals involved in the investigation led by Copprue. This taunting and harassing behavior caused Dr. Thompson and Rios-Harris to feel uncomfortable while working on CVC campus.

3.11    After the July 30 Meeting, Rios-Harris submitted a grievance of a hostile work environment to Davis. At the center of the grievance was Copprue and the lack of proper procedure and protocol in removing Dr. Thompson and Rios-Harris from their positions, and it specifically referenced the July 30 Meeting. However, Davis dismissed Rios-Harris's grievance, citing the students' complaint and subsequent investigation. Despite clarifying the separate issues, Rios-Harris's grievance was still not properly considered or explored.

## IV.    Dr. Thompson's Causes of Action

4.1    <u>Alternative Pleadings</u>.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.

### A.    Count One: Deprivation of Liberty Interest

**Violations of 42 U.S.C. § 1983;**
**Violations of the United States Constitution,**
**Equal Protection:**
**Fourteenth Amendment**

4.2    To the extent necessary, Paragraphs 1.1 through 3.11 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.3    As set forth above, Defendant's actions constitute violations of the United States Constitution, namely the protections of the Fourteenth Amendment, which prevents Defendant from depriving Dr. Thompson of his rights, privileges, and/or immunities. This claim is brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for the deprivation of rights secured by the Constitution or other federal law.

4.4     Defendant deprived Dr. Thompson of his right to due process – as secured by the Fourteenth Amendment.

4.5     Defendant deprived Dr. Thompson of his right to procedural due process by depriving him of a liberty interest in his good name, acting under color of law. Specifically, Dr. Thompson was denied due process by the Defendant's action of discharging him from the position of PTK advisor and caused to be made public false and stigmatizing accusations of misconduct. Such behavior entitled Dr. Thompson to a name-clearing hearing by the Defendant, but complaints from Dr. Thompson were disregarded by Davis. Further, Dr. Thompson was denied the opportunity to defend himself against the accusations when they were first made known to him by Copprue.

4.6     As a result of the foregoing, Dr. Thompson has been damaged and hereby seeks to recover his damages from said conduct by Defendant in an amount to be proven at trial.

4.7     As to claims for federal violations of due process provided by the Fourteenth Amendment, Dr. Thompson herein sues Defendant pursuant to 42 U.S.C. § 1983. All of Defendant's conduct was under color of law. Accordingly, Dr. Thompson seeks recovery of the full measure of relief and damages against Defendant, including but not limited to compensatory damages and/or nominal damages, specifically including mental anguish and emotional distress damages, consequential and incidental damages, and any and all other equitable and compensatory relief which may be available under law and/or in equity.

4.8     These unconstitutional and discriminatory actions constitute the policy of Defendant and/or were made and/or ratified by the policymakers of Defendant, namely Copprue and Davis, to whom final authority had been given by Defendant's Board of Trustees for the

purpose of making such decisions. On information and belief, the Board of Trustees, as the ultimate

policymaker of Defendant, accepted and/or ratified the action complained therein.

**B.      Count Two: Deprivation of Property Interest**

**Violations of 42 U.S.C. § 1983;**
**Violations of the United States Constitution,**
**Equal Protection:**
**Fourteenth Amendment**

4.9      To the extent necessary, Paragraphs 1.1 through 4.8 of this Complaint are hereby

referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.10     As set forth above, Defendant's actions constitute violations of the United States

Constitution, namely the protections of the Fourteenth Amendment, which prevents Defendant

from depriving Dr. Thompson of his rights, privileges, and/or immunities. This claim is brought

pursuant to 42 U.S.C. § 1983, which provides a cause of action for the deprivation of rights secured

by the Constitution or other federal law.

4.11     Defendant deprived Dr. Thompson of his right to due process – as secured by the

Fourteenth Amendment.

4.12     Defendant deprived Dr. Thompson of his right to due process by depriving him of

a property interest in his employment, acting under color of law. Specifically, Dr. Thompson was

denied due process by the Defendant's action of removing from him from his position as PTK

advisor without following proper DCCCD and CVC protocol or allowing him an opportunity to

defend himself against the allegations of others. This effectively denied him a pre-disciplinary

component of due process. Further, Defendant denied him a post-disciplinary component of due process.

4.13    As a result of the foregoing, Dr. Thompson has been damaged and hereby seeks to recover his damages from said conduct by Defendant in an amount to be proven at trial.

4.14    As to claims for federal violations of due process provided by the Fourteenth Amendment, Dr. Thompson herein sues Defendant pursuant to 42 U.S.C. § 1983. All of Defendant's conduct was under color of law. Accordingly, Dr. Thompson seeks recovery of the full measure of relief and damages against Defendant, including but not limited to compensatory damages and/or nominal damages, specifically including mental anguish and emotional distress damages, consequential and incidental damages, and any and all other equitable and compensatory relief which may be available under law and/or in equity.

4.15    These unconstitutional and discriminatory actions constitute the policy of Defendant and/or were made and/or ratified by the policymakers of Defendant, namely Copprue, to whom final authority had been given by Defendant's Board of Trustees for the purpose of making such decisions. On information and belief, the Board of Trustees, as the ultimate policymaker of Defendant, accepted and/or ratified the action complained therein.

**C.    Count Three: Hostile Work Environment**

**Violations of 42 U.S.C. § 1981;
Discrimination**

4.16    To the extent necessary, Paragraphs 1.1 through 4.15 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.17    As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1981, as Defendant, a state actor and working under color of law, denied Dr. Thompson his rights to full and equal benefit of the laws.

4.18     Defendant deprived Dr. Thompson of his rights to full and equal benefit of the laws by subjecting him to harassment, specifically a hostile work environment, acting under color of law, based on the Dr. Thompson's race. Specifically, Dr. Thompson was discriminated against as a white employee and by Copprue's actions of causing to be made public false and stigmatizing allegations of Dr. Thompson and by subjecting him to inappropriately aggressive and misguided denigration. Copprue's conduct was not welcomed by Dr. Thompson. Copprue's actions were, at least in part, motivated by the fact that Dr. Thompson is white. The conduct was so severe or pervasive that a reasonable person in Dr. Thompson's position would find Dr. Thompson's work environment to be hostile or abusive. Additionally, Dr. Thompson believed his work environment to be hostile or abusive as a result of Copprue's conduct.

4.19     As a result of the foregoing, Plaintiff has been damaged and hereby seeks to recover his damages from said conduct by Defendant in an amount to be proven at trial.

4.20     As to claims for federal violations of racially motivated discrimination, Plaintiff herein sues Defendant pursuant to 42 U.S.C. § 1981. All of Defendant's conduct was under color of law. Accordingly, Plaintiff seeks recovery of the full measure of relief and damages against Defendant, including but not limited to compensatory damages and/or nominal damages, specifically including mental anguish and emotional distress damages, consequential and incidental damages, and any and all other equitable and compensatory relief which may be available under law and/or in equity.

4.21     These unconstitutional and discriminatory actions constitute the policy of Defendant and/or were made and/or ratified by the policymakers of Defendant, namely Copprue, to whom final authority had been given by Defendant's Board of Trustees for the purpose of

making such decisions. On information and belief, the Board of Trustees, as the ultimate policymaker of Defendant, accepted and/or ratified the action complained therein.

### D.     Count Four: Texas Labor Code

**Violations of Chapter 21 of the Texas Labor Code:
Discrimination**

4.22     Dr. Thompson is not presently asserting a claim under Chapter 21 of the Texas Labor Code, however, he intends to file a complaint with the Texas Workforce Commission. Upon receipt of his "right to sue" letter, Dr. Thompson will amend this Complaint and assert claims against Defendant for discrimination.

### E.     Count Five: Racial Discrimination

**Violations of Title VII of the Civils Rights Act,
as amended, 42 U.S.C. § 2000e-2(a):
Discrimination**

4.23     Dr. Thompson is not presently asserting a claim under Title VII of the Civil Rights Act of 1964, however, he does plan to file complaints with the Texas Workforce Commission and the Equal Employment Opportunity Commission. Upon receipt of his "right to sue" letter and exhaustion of administrative relief, Dr. Thompson will amend this Complaint and assert claims against Defendant for discrimination under Title VII of the Civil Rights Act.

### V.     Rios-Harris's Causes of Action

5.1     <u>Alternative Pleadings</u>.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.

### A.     Count One: Deprivation of Liberty Interest

**Violations of 42 U.S.C. § 1983;
Violations of the United States Constitution,
Equal Protection:
Fourteenth Amendment**

5.2     To the extent necessary, Paragraphs 1.1 through 4.23 of the Complaint are hereby referenced and fully incorporated herein by their specific reference, as though fully set forth herein.

5.3     As set forth above, Defendant's actions constitute violations of the United States Constitution, namely the protections of the Fourteenth Amendment, which prevents Defendant from depriving Rios-Harris of her rights, privileges, and/or immunities. This claim is brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for the deprivation of rights secured by the Constitution or other federal law.

5.4     Defendant deprived Rios-Harris of her right to procedural due process – as secured by the Fourteenth Amendment.

5.5     Defendant deprived Rios-Harris of her right to due process by depriving her of a liberty interest in her good name, acting under color of law. Specifically, Rios-Harris was denied due process by the Defendant's action of discharging her from the position of PTK advisor and caused to be made public false and stigmatizing accusations of misconduct. Such actions entitled Rios-Harris to a name-clearing hearing by the Defendant, but complaints from Rios-Harris were disregarded by Davis. Further, Rios-Harris was denied the opportunity to defend herself against the accusations when they were first made known to her by Copprue.

5.6     As a result of the foregoing, Rios-Harris has been damaged and hereby seeks to recover her damages from said conduct by Defendant in an amount to be proven at trial.

5.7     As to claims for federal violations of due process provided by the Fourteenth Amendment, Rios-Harris herein sues Defendant pursuant to 42 U.S.C. § 1983. All of Defendant's conduct was under color of law. Accordingly, Rios-Harris seeks recovery of the full measure of relief and damages against Defendant, including but not limited to compensatory damages and/or nominal damages, specifically including mental anguish and emotional distress damages,

consequential and incidental damages, and any and all other equitable and compensatory relief which may be available under law and/or in equity.

5.8     These unconstitutional and discriminatory actions constitute the policy of Defendant and/or were made and/or ratified by the policymakers of Defendant, namely Copprue and Davis, to whom final authority had been given by Defendant's Board of Trustees for the purpose of making such decisions. On information and belief, the Board of Trustees, as the ultimate policymaker of Defendant, accepted and/or ratified the action complained therein.

**B.     Count Two: Deprivation of Property Interest**

**Violations of 42 U.S.C. § 1983;**
**Violations of the United States Constitution,**
**Equal Protection:**
**Fourteenth Amendment**

5.9     To the extent necessary, Paragraphs 1.1 through 5.8 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

5.10    As set forth above, Defendant's actions constitute violations of the United States Constitution, namely the protections of the Fourteenth Amendment, which prevents Defendant from depriving Rios-Harris of her rights, privileges, and/or immunities. This claim is brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for the deprivation of rights secured by the Constitution or other federal law.

5.11    Defendant deprived Rios-Harris of her right to due process – as secured by the Fourteenth Amendment.

5.12    Defendant deprived Rios-Harris of her right to due process by depriving her of a property interest in her employment, acting under color of law. Specifically, Rios-Harris was

denied due process by the Defendant's action of removing from her from her position as PTK advisor without following proper DCCCD and CVC protocol or allowing her an opportunity to defend herself against the allegations of others. This effectively denied her a pre-disciplinary component of due process. Further, Defendant denied her a post-disciplinary component of due process.

5.13    As a result of the foregoing, Rios-Harris has been damaged and hereby seeks to recover her damages from said conduct by Defendant in an amount to be proven at trial.

5.14    As to claims for federal violations of due process provided by the Fourteenth Amendment, Rios-Harris herein sues Defendant pursuant to 42 U.S.C. § 1983. All of Defendant's conduct was under color of law. Accordingly, Rios-Harris seeks recovery of the full measure of relief and damages against Defendant, including but not limited to compensatory damages and/or nominal damages, specifically including mental anguish and emotional distress damages, consequential and incidental damages, and any and all other equitable and compensatory relief which may be available under law and/or in equity.

5.15    These unconstitutional and discriminatory action constitute the policy of Defendant and/or were made and/or ratified by the policymakers of Defendant, namely Copprue, to whom final authority had been given by Defendant's Board of Trustees for the purpose of making such decisions. On information and belief, the Board of Trustees, as the ultimate policymaker of Defendant, accepted and/or ratified the action complained therein.

C.    **Count Three: Hostile Work Enviornment**

**Violations of 42 U.S.C. § 1981;
Discrimination**

5.16    To the extent necessary, Paragraphs 1.1 through 5.15 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

5.17    As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1981, as Defendant, a state actor and working under color of law, denied Rios-Harris her rights to full and equal benefit of the laws.

5.18    Defendant deprived Rios-Harris of her rights to full and equal benefit of the laws by subjecting her to harassment, specifically a hostile work environment, acting under color of law, based on the Defendant's race. Specifically, Rios-Harris was discriminated against as a Hispanic employee and by Copprue's actions of causing to be made public false and stigmatizing allegations of Rios-Harris and by subjecting her to inappropriately aggressive and misguided denigration. Copprue's conduct was not welcomed by Rios-Harris. Copprue's actions were, at least in part, motivated by the fact that Rios-Harris is Hispanic. The conduct was so severe or pervasive that a reasonable person in Rios-Harris's positions would find Rios-Harris's work environment to be hostile or abusive. Additionally, Rios-Harris believed her work environment to be hostile or abusive as a result of Copprue's conduct.

5.19    As a result of the foregoing, Rios-Harris has been damaged and hereby seeks to recover her damages from said conduct by Defendant in an amount to be proven at trial.

5.20    As to claims for federal violations of racially motivated discrimination, Rios-Harris herein sues Defendant pursuant to 42 U.S.C. § 1981. All of Defendant's conduct was under color of law. Accordingly, Rios-Harris seeks recovery of the full measure of relief and damages against Defendant, including but not limited to compensatory damages and/or nominal damages, specifically including mental anguish and emotional distress damages, consequential and incidental damages, and any and all other equitable and compensatory relief which may be available under law and/or in equity.

5.21    These unconstitutional and discriminatory actions constitute the policy of Defendant and/or were made and/or ratified by the policymakers of Defendant, namely Copprue, to whom final authority had been given by Defendant's Board of Trustees for the purpose of making such decisions. On information and belief, the Board of Trustees, as the ultimate policymaker of Defendant, accepted and/or ratified the action complained therein.

**D.      Count Four: Texas Labor Code**

### Violations of Chapter 21 of the Texas Labor Code:
### Discrimination

5.22    Rios-Harris is not presently asserting a claim under Chapter 21 of the Texas Labor Code, however she intends to file a complaint with the Texas Workforce Commission. Upon receipt of her "right to sue" letter, Rios-Harris will amend this Complaint and assert claims against Defendant for discrimination under Chapter 21 of the Texas Labor Code.

**E.      Count Five: Racial Discrimination**

### Violations of Title VII of the Civils Rights Act,
### as amended, 42 U.S.C. § 2000e-2(a):
### Discrimination

4.25    Rios-Harris is not presently asserting a claim under Title VII of the Civil Rights Act of 1964, however, Rios-Harris does plan to file complaints with the Texas Workforce Commission and the Equal Employment Opportunity Commission. Upon receipt of her "right to sue" letter and exhaustion of administrative relief, Rios-Harris will amend this Complaint and assert claims against Defendant for discrimination under Title VII of the Civil Rights Act.

## VI.      Relief Requested

6.1     As to claims for violations of the United States Constitution and federal statute, namely violations of 42 U.S.C. § 1981 and the Fourteenth Amendment, Plaintiffs seek recovery of the full measure of relief and damages against Defendant, including, but not limited to,

compensatory damages and/or nominal damages, including mental anguish and emotional distress damages, consequential and incidental damages, and any and all other equitable, injunctive and compensatory relief which may be available at law and/or in equity.

### VII.    Fees, Costs and Interest

7.1    Plaintiffs have retained the law firm of Hill Gilstrap, P.C. to represent them in connection with this matter, and have agreed to pay for such reasonable and necessary services. In addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiffs are entitled to and seek to recover their reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity, and/or pursuant to 42 U.S.C. §§ 1981, 1983 and 1988(b).

7.2    Additionally, pursuant to 42 U.S.C. § 1988(c), Plaintiffs seek to recover any and all expert fees, which they incur and/or may incur in bringing this suit.  Plaintiffs also seek to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

### VIII.   Jury Demand

8.1    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs requests trial by jury.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Dr. Tommy Thompson and Rebekah Rios-Harris pray that Defendant be cited to appear and answer, and that, upon final hearing, Plaintiffs recover judgment against Defendant and be awarded:

(1)    any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant;

(2) equitable relief to the extent permitted by law and/or in equity;

(3) their litigation expenses and costs, including, but not limited to, their reasonable and necessary attorneys' fees and costs;

(4) pre- and post-judgment interest at the maximum rate permitted by law;

(5) costs of court; and

(6) such other and further relief, general and/or special, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

**HILL GILSTRAP, P.C.**

/s/ Frank Hill
Frank Hill
Bar Number: 09632000
1400 West Abram Street
Arlington, Texas 76013
Email: fhill@gilstrap.com
Telephone: (817) 261-2222
Fax: (817) 861-4685
fhill@hillgilstrap.com

**ATTORNEY FOR PLAINTIFFS
DR. TOMMY THOMPSON  &
REBEKAH RIOS-HARRIS**